# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| STEPHEN PAUL JARRELL, | : | |
| Plaintiff, | : | Case No. 3:11cv00434 |
| vs. | : | District Judge Timothy S. Black<br>Chief Magistrate Judge Sharon L. Ovington |
| NATIONAL PERSONNEL<br>RECORDS CENTER, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[2]

## I. Introduction

Suspecting that the United States Army or someone else had tampered with his military records, Plaintiff Stephen Paul Jarrell asked for, and received, a copy of his personnel file from Defendant National Personnel Records Center. He examined the file and concluded that someone had tampered with its contents.

Jarrell brings the present case *pro se* contending that Defendant "negligently and [/] or willfully failed in its duty to safeguard the records entrusted to it and that such failure harmed Plaintiff…." (Doc. #10, PageID at 37).

The case is presently before the Court upon Jarrell's Motion for Summary Judgment (Doc. #18), Defendant's Memorandum in Opposition (Doc. #21), Defendant's Motion for

---

[2] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

1

Summary Judgment (Doc. #22), Jarrell's Memorandum in Opposition (Doc. #24), Defendant's Reply (Doc. #25), Jarrell's Reply (Doc. #26), and the record as a whole.

## II.  Background

### A.  Jarrell's Military Service and Discharge

Construing the evidence of record in Jarrell's favor establishes the following.

To his credit, Jarrell enlisted in the United States Army in March 1971. After completing preliminary procedures, such as physical examinations, he reported for basic training at Fort Jackson, South Carolina. Things went poorly from the start. One week after basic training began, Jarrell and a friend left Fort Jackson without leave. Upon Jarrell's return home, his family convinced him to return to basic training, and they drove him back to Fort Jackson.

Almost immediately after Jarrell arrived back at the base, his platoon leader assaulted him, pinning him to the ground and striking his head about 12 times. (Doc. #18, PageID at 97).

After the attack, Jarrell and his family members prepared written statements describing the incident and submitted their statements to the Office of the Fort Commander. Jarrell also identified his attacker to his Company Commander, Captain Eugene Neville. Later, Captain Neville took him to a room where six soldiers were assembled. None was the assailant Jarrell had previously identified to Captain Neville, and Jarrell told Captain Neville so. Captain Neville then told Jarrell that he must be confused and that the investigation was completed. (Doc. #18, PageID at 97).

On or about April 17, 1971, Jarrell's mother received a letter from Lieutenant Colonel Kenneth M. Koester, informing her:

> Since your departure from Fort Jackson, Stephen has completed 2½ days of training, and appears to be adjusting well. I last talked to him today and he indicates he is getting along fine….
>
> * * *
>
> Investigation of the assault on Stephen is complete. The Investigating Officer took sworn testimony from many individuals in an attempt to find an eye witness to the assault. In addition, Stephen was given an opportunity to identify his assailant. Positive identification could not be made and there was insufficient evidence to substantiate who committed the assault.
>
> I will continue to closely monitor Stephen's progress and if I may be of further assistance, please feel free to write.

(Doc. #18, PageID at 95).

Unfortunately, however, Jarrell was not doing well even though he had been assigned to a new Company. Jarrell explains, "I could no longer follow commands such as march right or left because I was just as liable to go the wrong way." *Id*., PageID at 97. Jarrell was also subjected to "harassment and constant intimidation" in the days following the assault. He concluded that the Army would neither properly investigate the attack nor provide him with adequate medical treatment for the injuries he sustained. *Id*. As a result, on April 17, 1971, Jarrell left Fort Jackson for the second time, again without leave.

Over the next six months, Jarrell did not seek medical treatment for the injuries he sustained during the attack in order to avoid arrest for being absent without leave. (Doc. #18, PageID at 98). Jarrell's strategy only worked for a while. He was arrested in October 1971 and subsequently discharged from the Army under "other than honorable conditions." (Doc. #18, PageID at 89).

3

Jarrell submits a copy of an Army memorandum dated November 5, 1971 that relates to the recommendation and approval of his discharge from the Army with an Undesirable Discharge Certificate. (Doc. #18, PageID at 86). According to Jarrell, the memorandum demonstrates that the Army's record of the medical examination he received at discharge was included in his personnel file on November 5, 1971.

### B. Jarrell's Medical Complications

According to Jarrell, during the days immediately after the assault, he had difficulty following simple directions. He also alleges that he suffered a temporary loss of memory – including memories of the assault itself – and a decline in gross motor skills. And he states that over the next few years he developed great difficulty with chewing and swallowing food. (Doc. #18, PageID at 97).

In 1977, an oral surgeon determined that Jarrell had a broken bone that prevented him from swallowing properly and caused him to grit his teeth together while eating. Jarrell alleges that this had gradually loosened his teeth from the underlying bone, with two results: (1) he lost all his teeth, and (2) the bone once holding his teeth fragmented, and bone fragments worked their way out of his gums in small pieces over many years, requiring several dental surgeries to completely remove. (Doc. #18, PageID at 98).

To help him with these problems, Jarrell sought medical and dental benefits from the Veterans Administration. When his application was denied due to his the character of his discharge from the Army, Jarrell petitioned the Army Board for Correction of Military Records and the Army Discharge Review Board to change his status. His petitions were denied, and he was left without veterans' medical or dental benefits.

      C.      **Jarrell's Previous Case Against The U.S. Army**

In 1994 Jarrell filed a Complaint in this Court against the U.S. Army under the Federal Tort Claims Act. He charged that the Army had removed or destroyed records related to the 1971 assault, and fabricated or forged documents related to his dishonorable discharge, such as the report from his physical examination at the time of discharge. He claimed that his application for veterans' benefits was denied because of these problems with his records, and he sought $5,000,000 in damages. (Doc. #22, PageID at 147-52).

Granting the Army's motion to dismiss Jarrell's claims, United States Magistrate Judge Michael R. Merz affirmed the prior findings of the U.S. Army Claims Service, concluding: (1) *Feres v. United States*, 340 U.S. 135 (1950), prevented Jarrell from financial compensation for his alleged injuries because his injuries had been "integrally related to his military service," and (2) his Complaint was time-barred by the Federal Tort Claims Act's two-year statute of limitations. (Doc. #22, PageID at 151).

**III.**     **Jarrell's Present Allegations and Claims**

Jarrell alleges the following in his *pro se* Amended Complaint:

Claim Number 1. National Personnel Records Center failed to notify Archivist and Attorney General about missing records. On Oct. 23, 1978 Mr. Petterson and Adjudication Officer for the Veterans Administration stated that the V.A. had received my entrance medical examination but not my discharge medical examination. On 10/30/78 a person from the National Personnel Records Canter with the signed name of J. White stated that all my medical records were sent to the V.A. on 9/14/78. The NPRC was aware on 10/23/78 that a record in their system of records was missing. In addition, despite evidence that the discharge exam should have been in my records jacket, the NPRC failed to notify the Attorney General in order that he could track down the missing record in accordance with 44 USC Chapter 31.

5

>Claim Number 2. National Personnel Records Center deleted information on records sent to this court. In June of 1994 I filed a tort claim against the Army. Lieutenant Colonel Richard P. Laverdure certified that the records jacket, sent to this court and, pertaining to me were copies of the original records. The NPRC, which was aware that my discharge exam was missing, did or allowed an unknown person or person's access to someone else's records for the purpose of obtaining and altering that person's discharge exam, improperly allowed that person(s) to put the altered document in my file, and then provided the altered document to the court.
>
>Claim Number 3. National Personnel Records Center altered records sent to this court. In the same tort claim the NPRC did or allowed an unknown person or persons to alter my discharge certificate (DD 214) as part of the certified packet of records, pertaining to me, and sent to this court.
>
>Claim Number 4. National Personnel Records Center fabricated records sent to this court. Since the evidence of record shows that my records jacket was complete when I was discharged from the Army, it must be assumed that the NPRC did or allowed an unknown person or persons to alter and[/]or delete certain medical and dental records, pertaining to an assault on me April 12, 1971 and sent to this court. The evidence will show that the records in question are a complete fabrication.
>
>Claim Number 5. National Personnel Records Center failed again to notify the Archivist and Attorney General about records missing from the file. On Feb. 13, 1997 a person from the V.A. whose name and address have been deleted sent a request to the NPRC for records of an assault on me on April 12, 1971. A person from the NPRC whose name and title are hard to make out stated that on 4/24/97 there were no records of an assault on me in the file. Once again despite clear evidence that there should be records of the assault in my file the NPRC failed to notify the Attorney General [about] the missing records in accordance with 44 USC Chapter 31 sub sec 3106.

(Doc. #10, PageID at 34-36).

Jarrell's Amended Complaint "requests the court to order the defendant to pay damages of lost wages and medical and dental benefits from January 1972 to the present day and time." *Id.*, PageID at 37.

### IV.     Summary Judgment Standards

When, as here, parties have filed cross-motions for summary judgment, the Court grants or denies each motion for summary judgment on its own merit, applying the standards described in Fed. R. Civ. P. 56. *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

A party is entitled to summary judgment when there is no genuine dispute over any material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Barker v. Goodrich*, 649 F.3d 428, 432 (6th Cir. 2011).

To resolve whether a genuine issue of material fact exists, the Court draws all reasonable inferences in the light most favorable to the non-moving party. *Richland Bookmart, Inc. v. Knox County, Tenn.*, 555 F.3d 512, 520 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). With these reasonable inferences in the forefront, "[t]he central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Jones v. Potter*, 488 F.3d 397, 402-03 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); quoting, in part, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "Accordingly, '[e]ntry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Whitfield v. Tennessee*, 639 F.3d 253, 258 (6th Cir. 2011) (citations omitted). An

insufficient showing by the moving party cannot prevail, even if its factual underpinnings have not been challenged by the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153-61 (1970). "'The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as submitted for final resolution on a stipulated record.'" *Id.* (citations omitted). Summary judgment may not be appropriate where the parties disagree as to which facts in a stipulated record are material. *B.F. Goodrich Co. v. United States Filter Corp.*, 245 F.3d 547 (6th Cir. 2001).

## V. Discussion

### A. Jarrell's Claims Under The Federal Records Act

Jarrell contends that Defendant "was and is in violation of the Federal Records Act" – specifically, 44 U.S.C. §3106. (Doc. #18, PageID at 80-81).

"The Federal Records Act is a collection of statutes governing the creation, management, and disposal of records by federal agencies." *Public Citizen v. Carlin, Archivist of United States*, 184 F.3d 900, 902 (D.C. Cir. 1999) (Ginsburg, C.J.). Section 3106, upon which Jarrell relies, is one such statute. It states:

> The head of each Federal agency shall notify the Archivist[1] of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency of which he is the head that shall come to his attention and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records he knows or has reason to believe have been unlawfully removed from his agency….

---

[1] "[T]he term 'Archivist' means the Archivist of the United States[.]" 44 U.S.C. §2901(11).

44 U.S.C. §3106 (footnote added).  When the Archivist, himself, learns of similar problems with an agency's records, he assists the agency's head in gaining the help of the Attorney General to recover the records "unlawfully removed and for other redress provided by law." 44 U.S.C. § 2905(a).  And, if the agency head does not act within a reasonable time, "the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made."  44 U.S.C. §2905(a).

Assuming, momentarily, that Defendant failed to satisfy the duties described in either of these statutes, the remedies Jarrell seeks founder.  In his Amended Complaint, Jarrell seeks an Order requiring Defendant "to pay damages of lost wages and medical and dental benefits from January 1972 to the present day and time." (Doc. #10, PageID at 37). This relief is unavailable to him.

"There is no waiver of sovereign immunity for a damages claim in the Federal Records Act …."  *Pragovich v. United States*, 602 F. Supp.2d 194, 195 (D.D.C. 2009); *see Morrow v. United States*, 723 F. Supp. 2d 71, 79 (D.D.C. 2010) (In light of the Government's sovereign immunity, the court lacked subject matter jurisdiction over monetary claims against the U.S. under the Federal Records Act and the Administrative Procedures Act). Consequently, the Federal Records Act provides no support for Jarrell's attempt to obtain monetary damages.

Jarrell also seeks a wholly different remedy:

> The court should restore me to the position I would have been in had the Government maintained complete and accurate records of my military service. Specifically, I ask the court to order the government to grant me an honorable

9

>discharge with back pay and promotional considerations, or alternatively, to grant me a medical discharge with a service-connected disability or both.

(Doc. #1, PageID at 4).

The problem Jarrell encounters here is the doctrine announced in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 149 (1950).

>*Feres* and its progeny indicate that suits brought by service members against the Government for injuries incurred incident to service are barred by the *Feres* doctrine because they are the "*type[s]* of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *United States v. Shearer*, 473 U.S. [52], 59, 105 S.Ct. [3039], 3044 [(1985)]. *Parker v. Levy,* 417 U.S. 733, 743, 94 S.Ct. 2547, 2555, 41 L.Ed.2d 439 (1974). "[T]o accomplish its mission the military must foster instinctive obedience, unity, commitment, and esprit de corps." *Goldman v. Weinberger,* 475 U.S. 503, 507, 106 S.Ct. 1310, 1313, 89 L.Ed.2d 478 (1986).

*United States v. Johnson*, 481 U.S. 681, 691, 107 S.Ct. 2063 (1987). As Jarrell previously learned when Magistrate Judge Merz dismissed Jarrell's 1994 case, the *Feres* doctrine presents a high hurdle to overcome. Magistrate Judge Merz concluded – as did the U.S. Army Claims Service during Jarrell's administrative proceedings – that *Feres* barred Jarrell from using the Federal Tort Claims Act (1) to challenge the Army's decision not to upgrade his discharge or (2) to challenge the U.S. Veterans Administration's (VA's) denial of his requests for benefits. *See* Doc. #22, PageID at 150-51. This is no less true in the instant case where Jarrell seeks an Order requiring the Army to upgrade the character of his discharge and award him lost back pay. The *Feres* doctrine bars this judicial remedy. *See Bowen v. Oistead*, 125 F.3d 800, 804 (9th Cir. 1997) ("*Feres* doctrine is applicable whenever a legal action would require a civilian court to examine decisions regarding management, discipline, supervision, and control of members of the armed forces of the United

10

States.")(citation omitted); *see also Murphy v. Dep't of the Army*, C12-1476 JSC, 2012 WL 1294003 (N.D. Cal. Apr. 16, 2012) (*United States v. Shearer,* 473 U.S. 52, 58, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) stated "that 'whether to discharge a serviceman' is a professional military judgment of the type contemplated in *Feres*[.]").

As to Jarrell's other sought-after remedy – an Order requiring the VA to provide him with medical and dental benefits – to grant this remedy, this Court would have to reverse the VA's decision denying his application for benefits. But, the Veterans' Judicial Review Act vests exclusive jurisdiction in the VA Board of Veterans' Appeals to review VA's benefits decisions, which (in turn) are subject to review in the Court of Appeals for Veterans Claims, followed by review in the United States Court of Appeals for the Federal Circuit. *See* 38 U.S.C. §§ 7525(a), 7292; *see also Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997). This Court therefore lacks subject matter jurisdiction to review or alter the VA's decision to deny Jarrell's application for medical and dental benefits. *Robbins v. U.S. Dep't of Def.*, 2:11CV567-WKW, 2012 WL 3023261 (M.D. Ala. June 28, 2012) (citing *Beamon*, 125 F.3d at 974), Report and Recommendation adopted, 2:11-CV-567-WKW, 2012 WL 3022593 (M.D. Ala. July 24, 2012).

Defendant argues, citing *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 148-50, 100 S.Ct. 960 (1980), that it is entitled to summary judgment because the Federal Records Act does not provide Jarrell with a private right of action to address potential Federal Records Act violations. *Kissinger*, however, does not directly apply to the present case. *Kissinger* left open the question of what remedies might be available to a

11

private plaintiff like Jarrell. *Id.*, 445 U.S. at 150, n.5, 100 S.Ct. 960 ("We need not address what remedies might be available to private plaintiffs complaining that the administrators [now, the Archivist] and the Attorney General have breached a duty to enforce the [Federal] Records Act, since no such action was brought here.").

Defendant also points to the possibility that Jarrell might utilize, to a limited extent, the Administrative Procedures Act to litigate his present Federal-Records-Act claims. (Doc. #22, PageID at 130-32). Yet Jarrell's potential use of the Administrative Procedures Act, 5 U.S.C. 702, is foreclosed, as discussed above, under sovereign immunity, the *Feres* doctrine, and the Veterans' Judicial Review Act.

Jarrell may also not proceed under the Administrative Procedures Act because such a claim is time barred by the applicable six-year statute of limitations. *See Sierra Club v. Slater*, 120 F.3d 623, 631 (6th Cir. 1997) (applying 28 U.S.C. § 2401(a)). Jarrell asserts, for example, that Defendant received notification of missing records in 1978 and again in 1997, but he did not discover that Defendant had taken no action to investigate these discrepancies until he visited in 2011. *See* Doc. #18, PageID at 81. The evidence of record does not support this. Instead the evidence conclusively shows that his allegations of records tampering began as early as 1988 when he wrote to the Veterans' Administration: "I received the records I am presenting to you through the Freedom of Information Act sometime between 1976 & 1979. I recently discovered that these records have been altered and[/]or tampered with in an attempt to cover up my treatment at the Dispensary on April 12, 1971…." (Doc. #22, PageID at 174). In addition, Jarrell sued the Army on those grounds in 1994. *See id.*, PageID at 144; *see infra*, V(B). The present documents of record

therefore preclude any reasonable dispute over the fact Jarrell knew about the problems with his personnel records more than six years before he filed the present case (in December 2011). He is therefore time barred, under 28 U.S.C. § 2401(a), from utilizing the Administrative Procedures Act to litigate his present Federal Records Act claims.

Turning to Jarrell's Motion for Summary Judgment and attached documents, a thorough examination of his assertions, arguments, and other filings does not reveal either a legal or evidentiary basis that negates the above problems with his Federal Records Act claims. *See* Doc. #s, 18, 24, 26.  His Motion for Summary Judgment therefore lacks merit.

Accordingly, Defendant is entitled to summary judgment on Jarrell's claims under the Federal Records Act.

### B. Jarrell's Claims Under The Privacy Act

Jarrell claims that Defendant failed to perform its duties set forth in 5 U.S.C. 552(g)(1).[2]  (Doc. #1, PageID at 3).

With specific exceptions, the Privacy Act of 1974 prohibits a federal agency disclosing "any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by,

---

[2] Section 552(g)(1) states:

The head of each agency shall prepare and make publicly available upon request, reference material or a guide for requesting records or information from the agency, subject to the exemptions in subsection (b), including—

**(1)** an index of all major information systems of the agency;
**(2)** a description of major information and record locator systems maintained by the agency; and
**(3)** a handbook for obtaining various types and categories of public information from the agency ….

or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). The United States District Courts have subject matter jurisdiction over some categories of claims brought under the Privacy Act.  *See* 5 U.S.C. 552a(g)(1).

Defendant contends that it is entitled to summary judgment because Jarrell's claim under the Privacy Act is barred by its two-year statute of limitations. Jarrell argues that in 1994 he had no reason to know about Defendant's complicity with the record tampering and that it was not until he visited the National Personnel Records Center in 2011 that he first discovered similar copier marks on multiple documents, a date inconsistency, and correspondence about requests that he had not made.

A claim under the Privacy Act "may be brought . . . within two years from the date on which the cause of action arises …."  5 U.S.C. §552a(g)(5).  A cause of action under the Privacy Act arises when the plaintiff knows or has reason to know of an agency's violation.  *See Lockett v. Potter*, 259 Fed.Appx. 784, 786 (6th Cir. 2008); *see also Oja v. United States Army Corps of Engineers*, 440 F.3d 1122, 1135 (9th Cir. 2006); *Davis v. United States Dep't of Justice*, 204 F.3d 723, 726 (7th Cir. 2000).

Defendant is entitled to summary judgment because Jarrell's claims under the Privacy Act are time barred.  His claims fall outside the applicable statute of limitations because the evidence of record shows no genuine dispute over the fact that in 1994 he knew, or had reason to know, about the Privacy-Act violations he now raises.  *See Lockett*, 259 Fed. Appx. at 786; *Oja*, 440 F.3d at 1135; *Davis*, 204 F.3d at 726.  Jarrell asserted in his June 1994 Complaint that Army personnel (1) "altered and or destroyed records concerning an assault on me"; (2) "did further harm to me . . . by fabricating my discharge physical";

14

and (3) "did more harm to me by forging certain discharge documents." (Doc. #22, PageID at 144). He also stated in his June 1994 Complaint, "I have just recently become aware of the forgeries and other record discrepancies." *Id*. Because Jarrell raised his record-tampering allegations and claims in his June 1994 Complaint, there is no genuine dispute that by June 1994, Jarrell knew, or had reason to know, about the alleged records tampering of which he now complains. In light of Jarrell's allegations in his 1994 Complaint, no reasonable juror could agree with his conclusion – *i.e.*, that he had no reason to know Defendant allowed someone to tamper with his personnel records until he examined the records in 2011. As a result, the Privacy Act's statute of limitations began to run no later than June 1994 and expired two years later, no later than June 1996.

The Privacy Act's statute of limitations contains an exception when "an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency." 5 U.S.C. § 552a(g)(5). In that situation, the statute runs from the time the misrepresentation is discovered. However, such misrepresentation "pertains to information that the agency was required to disclose under the statute and willfully failed to disclose. In order for the exception to apply, the undisclosed information must be material to the establishment of liability under the Act." *Boyd v. United States*, 2013 U.S. Dist. LEXIS 36917 (S.D. Ohio, March 18, 2013). Jarrell presents no evidence that reasonably supports an allegation that Defendant willfully misrepresented information that was material to establishing its own liability. *See* Doc. #s 18, 24, 26.

Turning to Jarrell's Motion for Summary Judgment, attached documents, and other filings, a thorough examination of his arguments and evidence fails to reveal a legal or evidentiary basis for concluding that his claims under the Privacy Act are timely and that he is entitled summary judgment in his favor on these claims. His Motion for Summary Judgment therefore lacks merit.

Accordingly, Defendant is entitled to summary judgment on Jarrell's claims under the Privacy Act.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff Stephen Jarrell's Motion for Summary Judgment (Doc. #18) be DENIED;

2. Defendant National Personnel Records Center's Motion for Summary Judgment (Doc. #22) be GRANTED; and,

3. This case be terminated on the docket of this Court.

September 23, 2013

                 s/ Sharon L. Ovington
                  Sharon L. Ovington
               United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).